12 F.3d 1216
 43 Soc.Sec.Rep.Ser. 282A, Unempl.Ins.Rep. CCH (P) 17657A,
4 NDLR P 302
 Peter ROSETTI; Mary Doe, individually and on behalf of all
others similarly situated
v.
Donna SHALALA,* Secretary of Health and Human
Services, Peter Rosetti and Mary Doe, Appellants.
 No. 92-1909.
 United States Court of Appeals,
Third Circuit.
 Argued June 7, 1993.
Decided Dec. 15, 1993.
Sur Petition for Rehearing March 9, 1994.
 
 Catherine C. Carr (Argued), James M. Lafferty, Marian C. Nowell and Thomas D. Sutton, Community Legal Services, Philadelphia, PA, for appellants.
 Howard S. Scher (Argued), Leonard Schaitman, U.S. Dept. of Justice, Civil Div., Appellate Staff, Washington, DC, for appellee.
 Before: GREENBERG, NYGAARD and LEWIS, Circuit Judges.OPINION OF THE COURT
 LEWIS, Circuit Judge.
 
 
 1
 The plaintiffs in this case, Peter Rosetti and a woman using the pseudonym Mary Doe, filed a class action complaint alleging that the Secretary of Health and Human Services ("the Secretary") had violated the Administrative Procedures Act ("APA"), 5 U.S.C. Sec. 551 et seq., by using invalid rules and policies to determine whether people infected with the human immunodeficiency virus ("HIV") were entitled to disability benefits. Rosetti and Doe have HIV. At the time they filed their complaint, the Social Security Administration ("SSA") had denied their applications for benefits. They had appealed those decisions within the SSA's administrative review process but had not received final rulings from the agency.
 
 
 2
 Rosetti and Doe moved for class certification soon after filing their complaint. While the motion for certification was pending, administrative law judges ("ALJ") ruled that they were entitled to disability benefits.
 
 
 3
 The district court dismissed the plaintiffs' motion for class certification without prejudice and then dismissed part of the case for lack of subject matter jurisdiction; approximately five months later, it dismissed the remainder of the case, sua sponte, under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The plaintiffs have appealed from the decisions dismissing the case, as well as from the district court's decision to dismiss their motion for class certification without prejudice.
 
 
 4
 We conclude that the district court acted without Article III jurisdiction in dismissing the case, because the named plaintiffs' claims became moot when the SSA granted them benefits.[2] For the same reason, we cannot reach the merits of their appeal. The case does, however, raise one question that the district court retained constitutional authority to consider: the propriety of certifying a class. The district court never addressed that issue. Consequently, we will vacate the challenged orders and remand the case so that the district court may determine whether a class should be certified.
 
 I.
 
 5
 The questions this case raises require us to review its legal, factual and procedural background at some length.
 
 
 6
 The plaintiffs allege that in evaluating claims for disability benefits filed by people with HIV, the Secretary[3] has used overly narrow criteria that fail to recognize some of the ways in which the virus can cause disabling impairments. Consequently, they contend, HIV victims who are in fact disabled, but who suffer from symptoms of the virus that the SSA's rules and policies have overlooked, are not awarded benefits to which they should be entitled.
 
 
 7
 The SSA administers two programs that provide disability benefits. The Social Security Disability Insurance Program ("SSDI"), 42 U.S.C. Sec. 401 et seq., provides benefits to disabled people who have made contributions to the program. The Supplemental Security Income Program (SSI), 42 U.S.C. Sec. 1381 et seq., provides benefits to disabled people who are indigent. The plaintiffs sought to represent a class that included applicants to both programs, as each employs the same statutory and regulatory criteria to determine whether an applicant is disabled and therefore eligible for benefits.
 
 
 8
 The statutes establishing SSDI and SSI define "disability" as "the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. Secs. 423(d)(1)(A), 1382c(a)(3)(A). "An individual shall be determined to be under a disability," the statutes continue, only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other substantial gainful work which exists in the national economy...." 42 U.S.C. Secs. 423(d)(2)(A), 1382c(a)(3)(B).
 
 
 9
 The SSDI and SSI statutes authorize the Secretary to adopt rules and regulations for implementing the programs. 42 U.S.C. Secs. 405(a), 1383(d)(1). Under those regulations, the SSA evaluates claims for benefits using a five-step process,[4] which the Supreme Court has described as follows:
 
 
 10
 The first two steps involve threshold determinations that the claimant is not presently working, and has an impairment which is of the required duration and which significantly limits his ability to work. See 20 CFR Secs. 416.920(a) through (c) (1989). In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. See 20 CFR pt. 404, subpt. P.App. 1 (pt. A) (1989). If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. Sec. 416.920(d). If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits. Secs. 415.920(e) and (f).
 
 
 11
 Sullivan v. Zebley, 493 U.S. 521, 525-26, 110 S.Ct. 885, 888-89, 107 L.Ed.2d 967 (1990). The plaintiffs brought this suit to challenge the way that claims for benefits based on HIV-related illness have been handled at the third step of this five-step process. As the Court stated, id., in step three, the SSA determines whether a claimant's impairment matches or "equals" an impairment contained in the listing that appears in the federal regulations governing benefits programs. See 20 C.F.R. pt. 404, subpt. P. app. 1 (1992).[5] The list of impairments appearing in the regulations is called, appropriately enough, the Listing of Impairments. According to the plaintiffs, claims filed by people with HIV have been wrongly denied because the Listing of Impairments, and the way in which the SSA has instructed its officials to compare symptoms of HIV to the impairments included in the Listing, fail to account for some disabling manifestations of the virus. As a result, the plaintiffs contend, these claimants do not qualify for benefits at step three. Instead, the officials evaluating their claims move on to steps four and five. The plaintiffs argue that because of the nature of the inquiry that occurs at those steps, as well as the common characteristics of people with HIV, claimants who should but do not qualify for benefits at step three are in no way assured of receiving favorable rulings at steps four and five.
 
 
 12
 A claimant who is not satisfied with the SSA's initial ruling on his or her claim for disability benefits may appeal that decision through the agency's administrative review process. State agencies acting on behalf of the SSA make the initial evaluations of social security claims. 42 U.S.C. Secs. 421(a), 1383b(a). Claimants who choose to challenge those decisions may ask for de novo reconsideration by the same state agency. 20 C.F.R. Secs. 404.907, 416.1407 (1992). Next, a claimant can request and receive a hearing before an ALJ with the SSA's Office of Hearings and Appeals. 42 U.S.C. Secs. 405(b)(1), 1383(c)(1); 20 C.F.R. Secs. 404.929, 416.1429 (1992). Finally, claimants wishing to challenge an ALJ's decision may bring an appeal before the SSA's appeals council. 20 C.F.R. Secs. 404.967-404.982, 416.1467-416.1482 (1992). After completing this review process and thus exhausting their administrative remedies, disappointed claimants may challenge a final agency decision by filing suit in the district court. See Bowen v. City of New York, 476 U.S. 467, 478-486, 106 S.Ct. 2022, 2029-33, 90 L.Ed.2d 462 (1986) (discussing limitations period and exhaustion requirement for challenging agency action in district court).
 
 
 13
 The Centers for Disease Control ("CDC") first identified the disease now known as Acquired Immune Deficiency Syndrome ("AIDS") in the summer of 1981. The SSA started receiving claims for disability benefits filed by people with AIDS in late 1982. HIV was discovered in 1983 and definitively shown to cause AIDS in 1984. See Jon Cohen, AIDS Research: The Mood is Uncertain, 260 Science 1254, 1258 (1993). In April, 1983, the SSA issued an emergency teletype that contained the first instructions its officials received for evaluating AIDS-related claims.
 
 
 14
 Again, when SSA officials[6] evaluate a claim for benefits, they compare the claimant's impairment with the listed impairments appearing in the regulations. Until quite recently, however, there was nothing in the regulations to which symptoms of HIV or AIDS could be compared. In order to enable its officials to handle claims based on HIV- or AIDS-related illness, the SSA provided them with official "guidance," beginning with the emergency teletype in 1983. This guidance consisted of Social Security Rulings,[7] materials included in the SSA's operating guide,[8] and notices circulated within the agency. These materials instructed officials evaluating claims that certain conditions resulting from HIV or AIDS should be treated as matching or medically equivalent to a listed impairment; claimants exhibiting the symptoms described in the guidance would therefore qualify for benefits at step three of the process, in the same way they would if the Listing had contained the impairment upon which they based their claims. The SSA's guidance further instructed officials that if a claimant had symptoms of HIV or AIDS which the materials making up the guidance did not describe, his or her condition might still meet or equal a listed impairment; according to the guidance, such claims would have to be evaluated on a case-by-case basis.
 
 
 15
 Because the SSA's guidance was made up of purely internal, subregulatory materials, it was not subjected to the formal rule making procedures that, under the APA, proposed regulations must go through before being adopted. See 5 U.S.C. Sec. 553 (setting forth the APA rule making process). Although the Secretary had expressed his intention to promulgate a regulation addressing this issue as early as 1987, he did not attempt to do so until several years later. Thus, prior to December, 1991, the SSA could and did change its rules and policies for handling HIV- and AIDS-based claims as it saw fit, without having to contend with the APA's procedural requirements.
 
 
 16
 In mid-December, 1991, about six months after the plaintiffs filed this suit, the SSA updated its guidance for the final time by announcing a new Social Security Ruling. 56 Fed.Reg. 65498-65505 (Dec. 17, 1991). The next day, the Secretary published a notice of proposed rule making inviting public comment on a regulation that would govern the determination of whether people with immune system disorders are disabled and therefore entitled to benefits. See Fed.Reg. 65702-14 (Dec. 18, 1991). The content of the proposed regulation was the same as that of the Social Security Ruling that had been announced the previous day. Under the new regulation, the Listing of Impairments would be revised to include a new section and a new listing for the evaluation of HIV infection and AIDS. The SSA received comments on the proposed regulation through the early part of 1992 and was still evaluating them when the district court conducted a hearing in April of that year. The difficult and time-consuming process of adopting a new regulation dealing with this subject was delayed further because of the presidential election in November, 1992 and the resulting change in administrations. The new regulation was finally published in the Federal Register on July 2, 1993, several weeks after we heard oral argument in this case.
 
 
 17
 According to their complaint and motion for class certification, the plaintiffs brought this suit on behalf of all persons "residing in the Third Circuit" who had not received or would not receive fully favorable decisions in response to their claims for disability benefits based on HIV-related illness. However, the plaintiffs' submissions indicate that they actually sought to represent a somewhat smaller class; they contend that only certain people with HIV--namely, women, children, intravenous drug users, poor people, and perhaps people of color[9]--are harmed in the way the plaintiffs describe by the rules and policies that the SSA has used to determine whether a claimant with an HIV-related illness is disabled and therefore entitled to benefits.
 
 
 18
 In formulating rules and policies for evaluating claims for benefits based on HIV-related illness, the Secretary relied on studies conducted by the CDC. The plaintiffs allege that the CDC acquired its early understanding of AIDS and HIV from studies of white, male homosexuals, most of whom were relatively affluent; as a result, they contend, the CDC's definitions of the virus and the disease it causes, and of the conditions manifested in people with HIV and AIDS, have been underinclusive. They claim that different groups of people develop different symptoms of HIV and AIDS. Thus, the plaintiffs argue, a definition of an immune system disorder based entirely on the medical experience of relatively affluent, white, male homosexuals excludes other people--such as women, children, intravenous drug users, poor people, and people of color--who are suffering from HIV or AIDS, but who do not manifest their illness in the same way. According to the plaintiffs, the SSA's guidance, by relying on CDC definitions of HIV and AIDS, did not recognize the symptoms commonly experienced by members of the class they sought to represent. As a result, the plaintiffs contend, these individuals have been denied benefits when they had disabilities that should have entitled them to a favorable ruling at step three of the evaluation process.
 
 
 19
 The plaintiffs allege that this problem persisted because the SSA never had to subject its guidance to the notice and comment procedures required by the APA. Such exposure, in their view, would have revealed the deficiencies of the agency's rules and polices and thus would have led to corrective action. The plaintiffs argue that given the content and function of the guidance, the APA required the Secretary to treat her rules and policies as a regulation subject to APA procedural requirements. By failing to do so, the complaint states, the Secretary committed a violation of the APA. As relief for this unlawful conduct, the plaintiffs requested that the court (1) declare that the Secretary had violated the APA, and that they had been harmed by that illegal conduct, (2) issue an injunction ordering the Secretary to promulgate a new regulation, in full compliance with the APA, that would apply to claims for disability benefits based on HIV or AIDS, (3) issue an injunction granting the plaintiffs interim benefits pending the Secretary's promulgation of a new regulation, and (4) order the Secretary to reopen and readjudicate claims for benefits that had been denied under the old, allegedly invalid rules.
 
 II.
 
 20
 Rosetti and Doe filed their complaint at the end of May, 1991. Shortly thereafter, they moved for class certification. At the time, both named plaintiffs had been denied disability benefits at the initial evaluation stage. The denials had been upheld on reconsideration. Both plaintiffs had also brought appeals before ALJs, but neither had received a ruling.
 
 
 21
 In July, 1991, the ALJ reviewing Rosetti's appeal awarded him benefits. Later that month, Sharon Brown moved to intervene in the case. Brown's claim for disability benefits was denied several months earlier, before Rosetti and Doe filed their complaint; she had asked for reconsideration and was awaiting word from the state agency evaluating her claim. In August, 1991, the ALJ considering Doe's appeal awarded her benefits. The next month, Brown learned that the denial of her claim was affirmed following reconsideration. She brought an appeal before an ALJ and received a hearing date for the following March.[10] In November, 1991, a man using the pseudonym John Roe moved to intervene in the case. At the time the complaint was filed, Roe had been denied benefits. The denial had been affirmed on reconsideration, and Roe had received a hearing from an ALJ. In December, 1991, about one month after he moved to intervene and about nine months after his hearing, the ALJ awarded Roe benefits.
 
 
 22
 The Secretary answered the plaintiffs' complaint and simultaneously filed a motion for judgment on the pleadings or, in the alternative, for summary judgment. Later, the plaintiffs also moved for summary judgment. In February, 1992, before the district court had taken any substantive action in the case, the Secretary filed a Suggestion of Mootness under Rule 12(h)(3) of the Federal Rules of Civil Procedure.[11] The case was moot, the Secretary suggested, because (1) the named plaintiffs had received benefits, and (2) the agency had initiated the process of adopting a new regulation, in conformity with the APA, as the plaintiffs were attempting to compel it to do.
 
 
 23
 In an order dated March 16, 1992, the district court dismissed the plaintiffs' motion for class certification, as well as the two motions to intervene, without prejudice. It reasoned that if it decided to grant either of the defendant's pending dispositive motions, the motions for certification and intervention would become moot. It further instructed that in the event the defendant's dispositive motions were denied, the plaintiffs and would-be intervenors could reinstate these motions by writing the court a letter.[12]
 
 
 24
 About two weeks later, in an order dated March 31, 1992, the district court took up the cross-motions for summary judgment and the Secretary's Suggestion of Mootness, 788 F.Supp. 1380. The court first addressed the question of whether it had a statutory basis for jurisdiction over the plaintiffs' claims. It ruled that general federal question jurisdiction under 28 U.S.C. Sec. 1331 did not exist but that the mandamus jurisdiction statute, 28 U.S.C. Sec. 1361,[13] as well as a provision of the Social Security Act, 42 U.S.C. Sec. 405(g),[14] both conferred jurisdiction over the plaintiffs' claim that the Secretary had violated the APA by failing to promulgate a regulation, in compliance with APA procedural requirements, dealing with disability resulting from HIV and AIDS. However, in the district court's view, the applicability of those jurisdictional statutes depended in part on the particular form of relief that the plaintiffs were requesting; that is, the statutory grant of jurisdiction that authorized the court to hear the case also, in its view, limited the scope of the relief that it could consider awarding. Specifically, the court concluded that while the mandamus jurisdiction statute and the Social Security Act provided it with jurisdiction to decide whether the Secretary should be required to issue a regulation, those statutes did not establish a jurisdictional basis for what the court referred to as the "plaintiffs' claims for interim benefits or readjudication of individual plaintiffs' claims." Joint Appendix ("JA") at 105. Thus, the court dismissed those claims for lack of subject matter jurisdiction.
 
 
 25
 Turning next to the question of mootness, the district court noted that because the Secretary had initiated the process through which a new regulation would be adopted, a question of fact had been raised as to whether the SSA was continuing to evaluate claims using its subregulatory internal guidance, or whether it was instead already using a new regulation. The court therefore scheduled a hearing for May 11, 1992, to resolve that factual question. Earlier in its March 31 order, the district court had concluded that if the SSA's guidance consisted of the types of policies and rules that the plaintiffs had described, which the Secretary did not dispute, then the guidance constituted a "substantive" rule subject to APA procedural requirements. JA at 103.[15] In discussing the mootness question and explaining the purpose of the hearing it was scheduling, the district court stated that if the Secretary was in fact relying on void rules--that is, substantive rules that were adopted without being subjected to the procedural requirements of the APA--to evaluate HIV- and AIDs-based claims for disability benefits, then the court could exercise its equitable powers to enjoin him from continuing to do so. JA at 112.
 
 
 26
 The district court held a hearing on May 11, 1992, during which it learned that the Secretary was still considering comments made in response to the proposed regulation and that until a final regulation was promulgated, the SSA would continue to use its internal guidance to determine whether claimants suffering from HIV and AIDS were eligible for disability benefits. The Secretary argued, as he had earlier, that this was permissible because the guidance consisted of "interpretive" rather than "substantive" rules, which an agency may adopt and implement without going through the APA process.
 
 
 27
 Several months later, on September 2, 1992, the district court issued an order addressing the questions that remained unresolved following its March 31 order and the May 11 hearing. First, it denied the plaintiffs' motion for partial reconsideration of the March 31 order and reaffirmed its ruling that it did not have subject matter jurisdiction over their claims for interim benefits or for readjudication of previously decided claims. The plaintiffs' only remaining request, the court then stated, was for an injunction ordering the Secretary to adopt a new regulation, in conformity with APA procedural requirements, within a fixed amount of time.[16] The court concluded that the plaintiffs were not entitled to that relief because it could not "direct or otherwise interfere with the executive branch in the exercise of its discretionary obligations." JA at 134. Consequently, it ruled that the plaintiffs had failed to state a claim for which relief could be granted and dismissed the case, sua sponte, under Rule 12(b)(6).
 
 
 28
 The plaintiffs appealed the district court's decisions (1) dismissing without prejudice their motion for class certification and Brown's and Roe's motions to intervene,[17] (2) dismissing their case, in part, for lack of subject matter jurisdiction in its March 31 order, and (3) dismissing what it viewed as the remainder of their case under Rule 12(b)(6) in its September 2 order.
 
 III.
 
 29
 The named plaintiffs' eventual success in receiving the disability benefits for which they applied, as well as the Secretary's promulgation of new regulations that will govern the evaluation of claims for benefits based on HIV and AIDS, raise threshold questions of whether this case is now moot. We will address the jurisdictional implications of these developments in turn.
 
 A.
 
 30
 Article III of the Constitution provides that the "judicial Power" of the United States shall extend to "Cases" and "Controversies." U.S. Const. art. III, Sec. 2. Thus, the doctrines that make up the case or controversy requirement "state fundamental limits on federal judicial power in our system of government." Allen v. Wright, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). In part, these doctrines are comprised of judicially self-imposed, prudential restraints on federal jurisdiction. The central elements of the case or controversy requirement, however, are an " 'irreducible minimum' required by the Constitution." Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville, Florida, --- U.S. ----, ----, 113 S.Ct. 2297, 2302, 124 L.Ed.2d 586 (1993) (quoting Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)).
 
 
 31
 Article III does not permit federal courts to decide moot cases. E.g., Liner v. Jafco, Inc., 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d 347 (1964) (the federal courts' lack of authority "to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy"). Part of the constitutional component of the mootness doctrine is that the plaintiff maintain a "personal stake" in the outcome of litigation. E.g., Franks v. Bowman Transportation Co., 424 U.S. 747, 755, 96 S.Ct. 1251, 1259, 47 L.Ed.2d 444 (1976); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).[18] As the Supreme Court stated in Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979), "In order to satisfy Article III, the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."[19] The personal stake requirement ensures that courts will only decide disputes "presented in an adversary context and in a form historically viewed as capable of judicial resolution." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396-97, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (quoting Flast v. Cohen, 392 U.S. 83, 100-01, 88 S.Ct. 1942, 1952-53, 20 L.Ed.2d 947 (1968)). Additionally, the requirement follows from the often-repeated rule that under the case or controversy requirement, "federal courts are without power to decide questions that cannot affect the rights of the litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Thus, if developments occurring during the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the case as moot.
 
 B.
 
 32
 During the summer of 1991, shortly after they filed their complaint and motion for class certification, both named plaintiffs were awarded benefits by the ALJs reviewing their claims. As a result, the plaintiffs lost their personal stake in their challenge to the SSA's use of its internal guidance to determine whether claimants with HIV or AIDS were disabled. Even if that conduct was unlawful, it could not have injured the plaintiffs.
 
 
 33
 Claimants who receive benefits are paid from the time they apply and are eligible, not from the time the agency makes a favorable ruling. 20 C.F.R. Secs. 404.316, 404.620, 404.621, 416.202, 416.330, 416.335 (1992).[20] Additionally, because neither Rosetti nor Doe filed an application before the ones that were ultimately granted,[21] they could not have suffered harm from a previous denial, nor could they benefit from an injunction requiring the Secretary to reopen and readjudicate decided claims. Even if the SSA reevaluates their eligibility in the future--which probably would not result in a termination of benefits, given the unfortunate fact that the plaintiffs are already suffering from disabling symptoms of immune system disorders that cannot, at this point, be cured--determinations of who should receive or continue to receive benefits are now based on the new regulations, which were adopted in conformity with the APA and which the plaintiffs do not challenge. Thus, whatever harm Rosetti and Doe may have suffered as a result of the SSA's former reliance on its internal guidance was remedied during the agency's review process, when they were awarded benefits by the ALJs reviewing their claims. And because of that success, neither named plaintiff has maintained a personal stake in the outcome of this suit.[22] Normally, that conclusion would end our inquiry. In the class action context, however, mootness is a more complex issue.
 
 
 34
 In Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), a named plaintiff representing a certified class lost her personal stake in the outcome of the suit while her appeal was pending before the Supreme Court. The Court held that although the named plaintiff's individual claim had become moot, it retained jurisdiction because the controversy the suit involved remained "very much alive for the class of persons [the named plaintiff] had been certified to represent." Sosna, 419 U.S. at 401, 95 S.Ct. at 558. Thus, following Sosna, the mooting of a named plaintiff's claim does not eliminate federal jurisdiction over a class action, provided a class has already been certified.
 
 
 35
 However, as we recently explained in Lusardi v. Xerox Corp., 975 F.2d 964 (3d Cir.1992):
 
 
 36
 A different general rule operates when a class has yet to be certified. Normally, when claims of the named plaintiffs become moot before class certification, dismissal of the action is required. In such a situation, "there is no plaintiff (named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution."
 
 
 37
 Id. at 974-975 (citations omitted) (quoting Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1041 (5th Cir.1981)). Unlike the plaintiff in Sosna, Rosetti and Doe lost their personal stake in the outcome of the suit before the district court considered their motion for class certification. After the SSA awarded them benefits, there was no plaintiff, named or unnamed, who could assert a justiciable claim against the Secretary; consequently, under the general rule we recognized in Lusardi, there was no longer a case or controversy within the meaning of Article III.
 
 
 38
 General rules, however--especially general rules operating in the vicinity of the case or controversy requirement--generally carry at least a few exceptions. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 404 n. 11, 100 S.Ct. 1202, 1213 n. 11, 63 L.Ed.2d 479 (1980) (acknowledging that prior cases in this area are "somewhat confusing," that some "perhaps, are irreconcilable with others," and that "the strict, formalistic view of Article III jurisprudence, while perhaps the starting point of all inquiry, is riddled with exceptions"); see also Flast v. Cohen, 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968) (recognizing that Article III justiciability is "a concept of uncertain meaning and scope," and employing iceberg metaphor to describe the words "cases" and "controversies," which, the Court cautioned, "contain[ ] beneath their surface simplicity submerged complexities which go to the heart of our constitutional form of government"). In this case, under an exception to the general rule that applies when a named plaintiff's claim becomes moot before a class is certified, the district court did not lose jurisdiction over the entire case when the SSA awarded Rosetti and Doe benefits.
 
 
 39
 The Supreme Court created this exception in United States Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), and we have interpreted and applied it in several of our prior decisions. See, e.g., Lusardi, 975 F.2d at 975-78; Wilkerson v. Bowen, 828 F.2d 117, 121 (3d Cir.1987); Eisenberg v. Gagnon, 766 F.2d 770, 784-85 (3d Cir.1985); Mazus v. Dept. of Transportation, 629 F.2d 870, 875-76 (3d Cir.1990). Geraghty originated in this circuit. The plaintiff, John Geraghty, was a prisoner in federal custody who had been denied parole. Geraghty brought a suit on behalf of himself and a prospective class of similarly situated inmates challenging the guidelines that the Parole Commission used to determine whether a prisoner would be released on parole. The district court denied Geraghty's motion for class certification and granted summary judgment in favor of the Commission. While his appeal was pending before this court, Geraghty finished serving his sentence and was released. The Parole Commission then moved to dismiss the appeal as moot. We concluded that the case was not moot, reversed the district court's decisions on both class certification and the merits, and remanded the case for further proceedings.
 
 
 40
 The Supreme Court affirmed in relevant part.[23] It held that a federal appellate court retains jurisdiction over a named plaintiff's challenge to a denial of class certification, even if the plaintiff has not maintained a personal stake in the outcome of the litigation since that decision. The Court recognized that in light of Geraghty's release, his "substantive claims"--that is, his claims that the Parole Commission had acted unlawfully in adopting and applying its guidelines--were moot. Geraghty, 445 U.S. at 402, 100 S.Ct. at 1211. Nonetheless, it explained:
 
 
 41
 A plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a class.... We think that in determining whether the plaintiff may continue to press the class certification claim, after the claim on the merits "expires," we must look to the "personal stake" in the class certification claim.
 
 
 42
 Id. at 402, 100 S.Ct. at 1211-12. The Court then reviewed the purposes of the class action and the named plaintiff's role in this nontraditional form of litigation. It stated that the Federal Rules of Civil Procedure give the proposed class representative "the right to have a class certified if the requirements of the Rules are met." Id. at 403, 100 S.Ct. at 1212. "This 'right'," the Court continued, "is more analogous to the private attorney general type of concept than to the type of interest traditionally thought to satisfy the personal stake requirement." Id. Thus, according to Geraghty's reasoning, a named plaintiff who no longer suffers concrete and particularized harm resulting from challenged conduct, or who no longer stands to gain anything from a court's judgment on the merits of a suit he has brought, nonetheless retains a less traditional, private-attorney-general-type interest in his "procedural claim" that he is entitled to represent a class. Such a plaintiff, notwithstanding the mootness of his "substantive claim," has a continuing legal right to represent a class, provided he can meet the requirements of the Federal Rules; and that right gives such a plaintiff a surviving personal stake in the determination of whether he can act as a class representative. According to Geraghty, the plaintiff's stake in the vindication of his right to have a class certified is sufficient to establish the presence of a case or controversy with respect to the question of class certification. Thus, the Geraghty Court concluded: "We therefore hold that an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification had been denied. The proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Article III principles are not undermined." Geraghty, 445 U.S. at 404, 100 S.Ct. at 1212-13.
 
 
 43
 Geraghty expressly limits its holding "to the appeal of the denial of a class certification motion." Id. Given the decision's rationale, that statement hardly seems necessary. Only the unique nature of a class action, and the named plaintiff's unique interest in pursuing his procedural claim to represent a class, provide the requisite personal stake in the certification issue that preserves a federal court's jurisdiction over that question. Beyond the grant or denial of certification, there is no case or controversy. If and when a district court decides to certify a class, then, under the Court's holding in Sosna, jurisdiction would exist over the other questions a suit presents; as the Sosna Court explained, the existence of a live dispute between a defendant and a class member eliminates the mootness problem that arises when the named plaintiff loses her personal stake in the outcome of the suit. Sosna, 419 U.S. at 401-02, 95 S.Ct. at 558-59. Until certification is granted, however, Sosna does not come into play, and a federal court's judicial power only extends to the question in which the named plaintiff has an unusual but cognizable personal stake: whether the plaintiff should be permitted to represent a certified class.
 
 
 44
 Unlike the plaintiff in Geraghty, the named plaintiffs here lost their personal stake in the outcome of the suit before, not after, the district court denied their motion for certification. Rosetti and Doe had filed their motion, but it had not been decided when the SSA awarded them disability benefits. We confronted a similar situation in Wilkerson v. Bowen, 828 F.2d 117 (3d Cir.1987), and our decision in that case controls here.
 
 
 45
 In Wilkerson, three named plaintiffs brought a putative class action against the Secretary of Health and Human Services challenging the regulations that the SSA used to evaluate claims for disability benefits based on alcoholism. The SSA had initially denied the plaintiffs' claims for benefits; however, their claims were remanded to the Secretary for payment after they moved for class certification and summary judgment and before the district court ruled on those motions. Another individual moved to intervene in the case following the SSA's initial denial of his claim, but an ALJ granted him benefits while his motion was pending. The district court dismissed the three plaintiffs and the would-be intervenor from the suit, concluding that in light of their receipt of benefits, they could not represent the members of the proposed class whose claims had been denied.[24]
 
 
 46
 We reversed the judgment of the district court, stating that
 
 
 47
 the principle espoused in Geraghty is applicable whether the particular claim of the proposed class plaintiff is resolved while a class certification motion is pending in the district court (as in the present case) or while an appeal from denial of a class certification motion is pending in the court of appeals (as in Geraghty ).
 
 
 48
 Wilkerson, 828 F.2d at 121. Thus, we concluded that the district court erred in ruling that the named plaintiffs and the first would-be intervenor could not represent the proposed class merely because they had received benefits while the motion for certification was pending. We instructed that on remand, the district court should determine whether, under the requirements set by Rule 23, the plaintiffs should be permitted to represent the class that they sought to have certified.
 
 
 49
 As we recognized in Lusardi, some courts of appeals have read Geraghty differently than we did in Wilkerson. See Lusardi, 975 F.2d at 977 n. 19 (listing cases). Those courts have held that when named plaintiffs' individual, substantive claims become moot while their motion for class certification is still pending, the district court loses jurisdiction over the entire case. See, e.g., Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir.1987) ("In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live both at the time he brings the suit and when the district court determines whether to certify the putative class. If the plaintiff's claim is not live, the court lacks a justiciable controversy and must dismiss the claim as moot."). In spite of our awareness that other courts have disagreed with our understanding of Geraghty's applicability in this situation, we recently reaffirmed Wilkerson's conclusion "that allowing a district court to decide a pending class certification motion--filed when the named plaintiff had a live claim--after the named plaintiff's individual claims have been resolved is consistent with the Supreme Court's holding in Geraghty." Lusardi, 975 F.2d at 982 n. 32.[25]
 
 
 50
 When the SSA awarded Rosetti and Doe benefits, their individual substantive challenges to the Secretary's use of its internal guidance became moot. However, under our holding in Wilkerson, that development did not deprive the district court of jurisdiction over the named plaintiffs' already pending motion for class certification; nor, of course, does it deprive us of jurisdiction to review the district court's treatment of that motion.[26]
 
 
 51
 The Secretary argues that Wilkerson should be distinguished and that we should rely instead on Davis v. Thornburgh, 903 F.2d 212 (3d Cir.1990). In Davis, we quoted the Eleventh Circuit's decision in Tucker v. Phyfer, 819 F.2d 1030 (11th Cir.1987). The quotation included the following sentence, which we have already quoted above, supra p. 1228: "In a class action, the claim of the named plaintiff, who seeks to represent the class, must be live at the time he brings the suit and when the district court determines whether to certify the putative class." Davis, 903 F.2d at 222 (quoting Tucker, 819 F.2d at 1033).[27] According to the Secretary, that statement sets forth an authoritative and controlling rule that we should follow, and that requires a dismissal of this case on mootness grounds.
 
 
 52
 The Secretary's reliance on Davis is entirely misplaced. Davis clearly and repeatedly states our conclusion that the plaintiff there lacked standing to bring her suit and that consequently, we had no need to reach the question of mootness. See Davis, 903 F.2d at 222 ("We observe ... that this is not a case in which [the plaintiff Davis's] claim is barred as moot. Rather, as we have indicated, Davis has never had standing."); id. at 231 (Becker, J., concurring in part and dissenting in part) ("The majority dismisses the mootness question because, consistent with its logic, Davis never had standing."). Thus, any comment we made or quoted from Tucker on the subject of mootness was, at most, dictum. The sentence on which the Secretary relies is part of a larger quotation that begins with a statement about standing. That was the relevant point for our purposes in Davis, as the context of the opinion plainly indicates. In fact, immediately after quoting Tucker, in order to prevent any confusion about its relevance to our holding in Davis, we stated, yet again, that we were "not concerned with events after the filing of the district court complaint rendering the case moot, as Davis lacked standing at the outset." Davis, 903 F.2d at 222. The sentence from Tucker on which the Secretary bases her argument has nothing to do with our holding in Davis; therefore, it does not state an authoritative rule that we will follow here.
 
 
 53
 Additionally, and perhaps more importantly, the sentence from Tucker that the Secretary selects from the larger quotation that appears in Davis is quoted again, more recently, in Lusardi--where we list it as an example of conclusions that other courts of appeals have reached that disagree with our holding in Wilkerson. Lusardi, 975 F.2d at 977 n. 19. Thus, in Lusardi, we identify Tucker--quoting, specifically, the sentence that, according to the Secretary, provides the controlling rule here--as a case that adopts a reading of Geraghty that we have rejected.[28] The Secretary thus urges us to follow a rule which, as we expressly and accurately stated in our most recent decision addressing this issue, is contrary to the law of this circuit. We are not persuaded.
 
 
 54
 We have concluded that even after the named plaintiffs received benefits, at which point their challenge to the SSA's use of its internal guidance became moot, they retained a personal stake in their already asserted right to represent a class. Therefore, the district court had jurisdiction to consider the named plaintiffs' pending motion for class certification, and we have jurisdiction to review the district court's treatment of that motion. The plaintiffs, however, would have us go further; they contend that we can and should review the court's September 2 order, where it dismissed what remained of the case under Rule 12(b)(6).[29] They offer two arguments in support of that position. First, they contend that Geraghty only holds that if a named plaintiff's substantive claims have become moot, a court of appeals cannot review a decision on the merits of a case; a Rule 12(b)(6) dismissal, they argue, is not a decision on the merits and is therefore subject to review. Second, the plaintiffs point out that we would risk a significant waste of judicial resources if we remanded the case for a ruling on class certification without reviewing the dismissal. They warn that if we took that approach, and the district court certified a class, it would then simply dismiss the case for the same reasons, and this court would again confront the same questions on appeal.
 
 
 55
 The plaintiffs' first argument is based on a misreading of Geraghty. In that case, the Supreme Court did compare a decision denying class certification, which the plaintiff could challenge on appeal even though his "substantive claim" had become moot, with a decision on the merits, which the plaintiff could not challenge on appeal unless and until a class had been certified. Geraghty, 445 U.S. at 404, 100 S.Ct. at 1212. Geraghty, however, does not single out one type of appeal--a challenge to a decision on the merits--as the only kind that cannot be brought when a named plaintiff's substantive claim expires before a class is certified. Instead, Geraghty singles out one type of appeal--a challenge to a denial of class certification--as the only kind that can be brought in such a situation. The Court expressly limited its holding "to the appeal of the denial of class certification," id.; see also id. at 408, 100 S.Ct. at 1215 ("Our holding that the case is not moot extends only to the appeal of the class certification denial."), not to the appeal of any decision that is not on the merits.
 
 
 56
 The limited scope of Geraghty's holding is consistent with and in fact required by the decision's rationale. As we have explained, supra at 1226-27, the Geraghty Court reasoned that a court of appeals can review the denial of a named plaintiff's motion for class certification, even after his substantive claim becomes moot, because he maintains a personal stake in the disposition of the certification question. In the Court's view, "the Federal Rules of Civil Procedure give a proposed class representative the right to have a class certified if the requirements of the Rules are met." Geraghty, 445 U.S. at 403, 100 S.Ct. at 1212. That "right," the Court reasoned, "is more analogous to the private attorney general concept than to the type of interest normally thought to satisfy the 'personal stake' requirement." Id. (citing Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1970)). The Court concluded that because a plaintiff asserting that right "retains a 'personal stake' in obtaining class certification sufficient to assure that Article III values are not undermined," id. 445 U.S. at 404, 100 S.Ct. at 1212-13, the mooting of that plaintiff's substantive claim does not moot the question of whether certification is proper.
 
 
 57
 Geraghty's language and rationale show that the decision does not, as the plaintiffs suggest, permit us to determine whether the district court erred in dismissing this case (even if we agreed that its September 2 decision was not on the merits).[30] To the contrary, Geraghty prevents us from reaching any question other than class certification. The named plaintiffs here do not have a unique type of right, created by the Federal Rules or anything else, in a court's determination of whether it can afford them relief for the wrong they claim to have suffered. Nor are they performing a role that gives them special status, analogous to that held by private attorneys general, to have a court decide whether Congress has provided a statutory basis for federal jurisdiction over their case. Thus, the plaintiffs do not, under Geraghty or any reasoned extension of that decision, have a continuing personal stake in the resolution of the questions they would have us reach. Regardless of whether the district court decisions dismissing their case were on the merits, a district court has no authority to make those decisions, and a court of appeals has no authority to review them, if the named plaintiffs have lost their personal stake in the outcome of the suit. A decision construing a jurisdictional statute, or dismissing a case for failure to state a claim for which relief can be granted, is no less advisory than, for example, a disposition on the merits following trial, if a federal court makes that decision in the absence of a case or controversy.
 
 
 58
 Given the mootness of the named plaintiffs' claims, neither their rights nor the Secretary's would be affected by the district court's orders of March 31 and September 2, nor would those rights be affected by an affirmance or reversal of those decisions. Thus, the district court had no jurisdiction to dismiss the case in the manner it did, and we have no power to decide whether it erred in doing so. See, e.g., North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of the litigants in the case before them."). As we recently stated in State of New Jersey, Department of Environmental Protection and Energy v. Heldor Industries, Inc., 989 F.2d 702, 706 (1993), Article III prevents a federal court "from taking any action in moot cases." Geraghty does not alter that fundamental principle, but creates a special rule for the question of class certification, in which a named plaintiff retains a personal stake because of the unique nature of class litigation. The plaintiffs ask us to broaden that rule to include all decisions that are not on the merits. Because their position is inconsistent with both the language and rationale of Geraghty, and with basic principles of Article III jurisprudence, we cannot accept it. Thus, we will not review the district court's March 31 order, where it dismissed part of the case for lack of subject matter jurisdiction, or its September 2 order, where it dismissed what remained under Rule 12(b)(6).
 
 
 59
 The plaintiffs may be right in predicting that by not determining whether the district court erred in dismissing the case, our decision could very well result in a waste of judicial resources. On remand, the district court could certify a class and then dismiss the case for the same reasons that it did so previously, although it could also reconsider the issues and reach different conclusions.[31] If the district court makes the same decisions, the plaintiffs could bring the same appeal. So, perhaps we would save the parties, the district court and ourselves substantial time and effort by reviewing the orders dismissing the case. However, Article III does not permit us to dispense with the case or controversy requirement in an effort to promote the efficient use of judicial (or other) resources. As the Supreme Court stated in Sosna, 419 U.S. at 401 n. 9, 95 S.Ct. at 558 n. 9, we cannot relax this constitutional constraint on our authority because of "the practical demands of time." Finally, we are sensitive to, and deeply regret, any hardship that members of the proposed class may suffer as a result of delay that may be caused by our decision not to review the district court's dismissal of this case. Again, however, practical concerns, even urgent practical concerns that deserve a response, cannot satisfy the constitutional requirement that limits the scope of our focus here. As Justice Powell stated in his Geraghty dissent, public interest in the resolution of an issue cannot replace the necessary individual interest in the outcome. Geraghty, 445 U.S. at 411-412, 100 S.Ct. at 1216 (Powell, J., dissenting) (citing DeFunis v. Odegaard, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974)).
 
 
 60
 To summarize, when the SSA awarded Rosetti and Doe disability benefits in the summer of 1991, their challenge to the agency's use of its internal guidance to evaluate claims based on HIV or AIDS became moot. Therefore, the district court did not have jurisdiction, under Article III's case or controversy requirement, to decide whether it had statutory jurisdiction, under the mandamus jurisdiction statute or the Social Security Act, over aspects of the case, or to decide whether it could grant relief for the allegedly unlawful conduct giving rise to this suit. For the same reason, we do not have jurisdiction to review those decisions here. The only question in which the named plaintiffs continued to have a personal stake after receiving benefits was the propriety of class certification. The district court never addressed that issue. It dismissed the motion for certification, without prejudice, for purely administrative reasons.[32] Thus, the district court never decided whether the proposed class should be certified, or whether the named plaintiffs, or perhaps an intervenor,[33] should be permitted to represent the class in this litigation. We cannot review those decisions before they are made. Therefore, for the reasons we have stated, we will vacate the district court's orders of March 31 and September 2 and remand the case so that the district court can address these questions.
 
 C.
 
 61
 We still must consider whether the Secretary's recent promulgation of new regulations for evaluating claims for disability benefits based on HIV or AIDS renders the entire case moot.
 
 
 62
 If, in light of the publication of the new regulations, the injury that the plaintiffs and prospective class members allegedly suffered had been fully redressed, then we would have no constitutional authority to consider any aspect of this appeal. "[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." Church of Scientology of California v. United States, --- U.S. ----, ----, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)). Needless to say, it would be impossible for the court to grant effectual relief for a wrong that has already been remedied. Thus, if a favorable decision by a federal court could not provide the plaintiffs with more than the defendant has already given them, the entire case, including the question of class certification, would be moot. See, e.g., California v. San Pablo & Tulare R.R., 149 U.S. 308, 314, 13 S.Ct. 876, 878, 37 L.Ed. 747 (1893).
 
 
 63
 To a significant extent, the Secretary has provided the plaintiffs with what they sought to attain in bringing this suit: a regulation dealing with AIDS and HIV adopted through compliance with APA procedural requirements. If the plaintiffs had requested no more than that, we would dismiss this appeal as moot. See Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm'n, 680 F.2d 810, 813-15 (D.C.Cir.1982) (holding that a challenge to an agency's adoption of a rule, based on its failure to comply with APA procedural requirements, was mooted by the agency's repromulgation of the rule in accordance with the APA). However, Rosetti, Doe, and the proposed class members have asked for more than what the Secretary has already provided.
 
 
 64
 In addition to the promulgation of new regulations, the plaintiffs sought an injunction requiring the Secretary to reopen and readjudicate claims that had been denied under the SSA's internal guidance. Claimants with HIV or AIDS who have been denied disability benefits may now reapply; however, if they do, and if the SSA rules that they are now entitled to benefits, such claimants would only receive payments for the period covered by their new applications. During the time between applications, they would have foregone the receipt of benefits as a result of an agency decision based on rules and policies that the plaintiffs have now challenged. Thus, the promulgation of new regulations would not eliminate the possibility that members of the prospective class suffered harm as a result of the SSA's previous use of its allegedly invalid guidance. The Secretary has informed the court that while the new regulations will apply to pending claims, she will not reopen and readjudicate HIV- and AIDS-based claims decided prior to the time the new regulations went into effect. (Secretary's Letter to the Court dated July 16, 1993, p 2.) That position is consistent with existing SSA regulations, which provide that decided claims will only be reopened for good cause, and that the agency "will not find good cause to reopen [a] case if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made." 20 C.F.R. Secs. 404.989(b), 416.1489(b) (1992).
 
 
 65
 The promulgation of the new regulations gives the plaintiffs only some, not all, of the relief they sought in bringing this suit. Therefore, the case is not moot as a result of this recent development.
 
 IV.
 
 66
 For the reasons stated, the district court's decisions dismissing the case, set forth in its orders of March 31, 1992 and September 2, 1992, will be vacated, and the case will be remanded to the district court for further proceedings consistent with this opinion.
 
 SUR PETITION FOR REHEARING
 
 67
 March 9, 1994.
 
 
 68
 PRESENT: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and LEWIS, Circuit Judges.
 
 
 69
 The petition for rehearing filed by appellee in the above entitled case having been submitted to the judges who participated in the decision of this court and to all other available circuit judges in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. Judges Stapleton, Hutchinson and Roth would have granted rehearing.
 
 
 
 *
 Ms. Shalala was substituted for Dr. Louis Sullivan as the named party pursuant to Rule 43(c)(1) of the Federal Rules of Appellate Procedure
 
 
 [1]
 We set forth the procedural history in greater detail below, infra pp. 1221-23
 
 
 [2]
 This case raises relatively complex procedural issues that are difficult to summarize without creating some confusion. In particular, we recognize that the conclusion we have just stated--that the district court lacked Article III jurisdiction to dismiss the case--might strike even patient and understanding readers as a curious one. Normally, when a federal court does not have jurisdiction over a case, it does precisely what the district court did here: dismiss it. However, as we explain at greater length below, infra pp. 1221-23, the district court's decision dismissing part of the case followed from its construction of the mandamus jurisdiction statute, 28 U.S.C. Sec. 1361, and a provision of the Social Security Act, 42 U.S.C. Sec. 405(g); it then dismissed what remained of the case under Rule 12(b)(6). As this opinion eventually makes clear, without a case or controversy, the district court lacked Article III jurisdiction to make those decisions
 
 
 [3]
 As we have noted, this suit was brought against Louis Sullivan, who was serving as the Secretary of Health and Human Services at the time the plaintiffs filed their complaint. Donna Shalala was substituted as the defendant after taking over Sullivan's position. When we mention the Secretary here, we mean to refer not just to Shalala but to her predecessors in office as well
 Pronouns, of course, present a more awkward problem. In setting forth the factual and procedural background, we will use "he" or "his" (as opposed to "she" or "her") only if Sullivan was serving as Secretary during the particular events we describe.
 
 
 [4]
 In SSA terminology, this is called the "Sequential Evaluation Process."
 
 
 [5]
 The listing contains approximately 125 impairments. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria [that define a listed impairment]." Zebley, 493 U.S. at 530, 110 S.Ct. at 891 (emphasis in original) (citing Social Security Ruling 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983)). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Id. at 531, 110 S.Ct. at 891 (emphasis in original) (citing 20 CFR Sec. 416.926(a) (1989))
 
 
 [6]
 When we refer to SSA officials, we mean to include officials of state agencies who make the initial evaluation of claims on behalf of the SSA
 
 
 [7]
 According to the Secretary, Social Security Rulings "consist of policy interpretations and acquiescence rulings, [which] are binding on all levels of adjudication including ALJs and the Appeals Council." Sec. Br. at 5 n. 3
 
 
 [8]
 This operating guide is called the Program Operation Manual System ("POMS")
 
 
 [9]
 The plaintiffs have not always listed each of these groups in describing the people harmed by the Secretary's conduct; people of color are only mentioned occasionally. Because the district court never took up the issue of class certification, we do not have a precise or authoritative definition of who the plaintiffs would have represented if the suit had gone forward
 
 
 [10]
 The record does not reveal whether Brown ever received benefits or whether she continued to challenge the denial of her claim
 
 
 [11]
 Rule 12(h)(3) provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."
 
 
 [12]
 The plaintiffs moved for reconsideration of the March 16 order, but the district court dismissed the case without ruling on that motion
 
 
 [13]
 Title 28 U.S.C. Sec. 1361 provides:
 The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff.
 
 
 [14]
 Title 42 U.S.C. Sec. 405(g) provides that "[a]ny individual, after any final decision of the Secretary made after a hearing to which he was a party," may obtain judicial review of that decision by a civil action brought in U.S. district court. The question this case presented, and that the district court considered, was whether section 405(g) gave the court jurisdiction in spite of the plaintiffs' failure to exhaust their administrative remedies. Normally, although not in every situation, individuals must satisfy the exhaustion requirement before challenging an SSA decision in district court. See Bowen, 476 U.S. at 482-86, 106 S.Ct. at 2031-33
 
 
 [15]
 We have held that "substantive rules," which "grant rights, impose obligations, or produce other significant effects on private interests," cannot be adopted without being subjected to APA procedural requirements. American Ambulance Service v. Sullivan, 911 F.2d 901, 907 (quoting Batterton v. Marshall, 648 F.2d 694, 701-02 (D.C.Cir.1980)). "Interpretive rules," on the other hand, "merely clarify or explain existing law or regulations." Id. (quoting Powderly v. Schweiker, 704 F.2d 1092, 1098 (9th Cir.1983)). "They express the agency's intended course of action, its tentative view of the meaning of a particular statutory term, or internal housekeeping measures organizing agency activities...." Id. (quoting Batterton, 648 F.2d at 702). An agency is not required to follow APA procedures when it adopts or amends interpretive rules. Bailey v. Sullivan, 885 F.2d 52, 62 (3d Cir.1989)
 
 
 [16]
 The plaintiffs had suggested that the Secretary be given 60 days to comply with such an order
 The district court did not mention the alternative of merely enjoining the SSA from continuing to use its guidance to evaluate claims; that limited type of relief would not have required that a new regulation be adopted within a given amount of time. Again, in its March 31 order, the court had intimated that it would make such a ruling if it found that the SSA was not using a new regulation adopted in conformity with APA requirements.
 
 
 [17]
 In their notice of appeal, the plaintiffs state that they are appealing the district court's decision to dismiss Brown's and Roe's motions to intervene. The Secretary, however, has argued that the intervenors' names do not appear in the caption of the notice and that therefore, under Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1987), they have not appealed the dismissal of their motions. Because of our conclusion that the status of the intervenors is not important to the disposition of the case, see infra n. 26, we need not address this question
 
 
 [18]
 We note that many judicial opinions discussing case or controversy principles do not mention the personal stake requirement, but instead refer to more specific, discreet elements of standing or mootness, such as the need to demonstrate "injury in fact" that can be fairly traced to challenged conduct. In reviewing these familiar elements of a case or controversy, courts are merely referring to constituent components of the more general, overarching requirement that a plaintiff have a personal stake in the outcome of litigation. The difference in language does not reflect a difference in the substance of the constitutional standard
 
 
 [19]
 Gladstone, Realtors involved questions of standing, not mootness; however, both doctrines require the plaintiff to show the same personal stake in the outcome of litigation. As Professor Monaghan has explained, the cases articulating the case or controversy requirement conceive of mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue through its existence (mootness)." Henry P. Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1373 (1973)
 
 
 [20]
 Claimants applying to the SSDI program may receive payments for a period of up to twelve months prior to the month in which they file their applications, provided they meet the other requirements for eligibility during that period. 20 C.F.R. Sec. 404.621(a) (1992). Claimants applying to the SSI program may not receive payments for a period predating the month in which they apply for benefits. 20 C.F.R. Sec. 416.335 (1992)
 
 
 [21]
 The plaintiffs have not stated that they each have only submitted a single claim for benefits; however, they have not alleged otherwise, and we feel safe in assuming that if either Rosetti or Doe had been denied benefits in the past, the record would reflect that fact
 
 
 [22]
 As we have noted, the complaint also asks for a declaratory judgment stating that the Secretary has violated the APA and that the plaintiffs have suffered harm as a result. That request, however, does not affect our determination of whether the case is moot in light of the plaintiffs' loss of their personal stake in the lawsuit. "The case or controversy requirement must be met regardless of the relief sought, including declaratory relief." Armstrong World Industries Inc. by Wolfson v. Adams, 961 F.2d 405, 410 (3d Cir.1992) (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)). Thus, a party with no personal stake in the outcome of litigation may not maintain its suit in federal court merely because it has requested declaratory relief. In some instances, suits involving requests for declaratory relief present difficult questions regarding the existence of a case or controversy; that is especially true when courts have to determine whether such suits meet the requirements of the ripeness doctrine. See Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 646-47 (3d Cir.1990) (discussing the difficulty of defining ripeness in the context of declaratory judgment actions). Here, however, the plaintiffs' request for declaratory relief does not create a close question. A case does not become any less moot if a plaintiff with no personal stake in the outcome asks the court to declare that someone has acted unlawfully to someone else's detriment
 
 
 [23]
 The Court reversed our judgment only to the extent that we had instructed the district court to consider the possibility of certifying subclasses on its own initiative. The Court stated that on remand, "it is not the District Court that is to bear the burden of constructing subclasses. That burden is upon the respondent and it is he who is required to submit proposals to the court. The court has no sua sponte obligation to so act. With this modification, the Court of Appeals' remand of the case for consideration of subclasses was a proper disposition." Geraghty, 445 U.S. at 408, 100 S.Ct. at 1214-15
 
 
 [24]
 The court permitted other members of the proposed class to attempt to intervene, and some submitted motions in an effort to do so. The court found, however, that because these new proposed intervenors had failed to exhaust their administrative remedies, they could not act as class representatives. It therefore denied their motions to intervene, as well as the original motions for class certification and interlocutory relief, and it dismissed the complaint. Wilkerson, 828 F.2d at 119. As we have noted above, supra n. 17, and discuss briefly below, infra n. 26, we do not view the treatment of the proposed intervenors as significant to the aspect of Wilkerson on which we rely here
 
 
 [25]
 The plaintiff-appellants argue that in County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), the Supreme Court reached the same conclusion we did in Wilkerson. Thus, they contend that after McLaughlin, the decisions of other courts that have read Geraghty differently are of dubious validity. We disagree. In McLaughlin, the Supreme Court did hold that the mooting of a class representative's claims did not eliminate jurisdiction over the entire class action, even though the class was not certified until after the named plaintiff's claims had become moot. Id. 500 U.S. at ----, 111 S.Ct. at 1667. The Court based that holding, however, on its conclusion that McLaughlin fit within the exception to the mootness doctrine for inherently transitory claims that the Court recognized in Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). As the Court explained, when "claims are so inherently transitory that the trial court will not have enough time to rule on a motion for class certification before the proposed representative's individual interest expires[,]" the traditional requirements of the mootness doctrine are suspended in order to preserve the merits of the case for judicial resolution. McLaughlin, 500 U.S. at ----, 111 S.Ct. at 1667. See also Lusardi, 975 F.2d at 983-85 (discussing Geraghty and Gerstein and the related but distinct exceptions to the mootness doctrine recognized in those cases). In McLaughlin, the Court found that it had jurisdiction to reach the merits of the case because the plaintiffs had presented an inherently transitory claim, not, as the plaintiffs suggest, because "it extended the Geraghty holding to the situation presented here." Appellants' Supp.Br. at 4. Thus, we appreciate but cannot accept the plaintiffs' efforts to enlist McLaughlin in support of our holding in Wilkerson. Nonetheless, we remain willing, not to mention bound, to stand by our past decisions, even the lonely ones with which other courts have disagreed
 
 
 [26]
 The Secretary urges us to distinguish Wilkerson on the basis that the individuals who had attempted to intervene in that case, unlike the would-be intervenors here, appealed the district court's decision along with the named plaintiffs. As a result, the Secretary argues, parties with live claims at the time the district court denied the motion for certification--like the plaintiff in Geraghty and unlike the named plaintiffs here and in Wilkerson--were before us when we heard the Wilkerson appeal. The status of the Wilkerson intervenors, the Secretary suggests, was critical to our decision and now provides a basis to distinguish the case. The Secretary also recommends her reading of Wilkerson because it would allow us to reconcile that decision with Davis v. Thornburgh, 903 F.2d 212 (3d Cir.1990), which, in her view, expresses an otherwise inconsistent view of Geraghty
 Even assuming, for the sake of argument, that Rosetti and Doe's notice of appeal did not include Brown and Roe as appellants, we are not persuaded by this attempt to distinguish Wilkerson. First, the Secretary's concern with the Wilkerson intervenors is not at all shared by the decision itself. The section of our opinion that discusses Geraghty does not even mention the intervenors, let alone provide any indication that our view of Geraghty's meaning or applicability turned on their role in the case. Thus, it is not surprising that in Lusardi, where we discussed and reaffirmed Wilkerson, we overlooked the intervenors entirely; apparently, we did not feel that they were important to the decision's holding or rationale. See Lusardi, 975 F.2d at 977 n. 19, 982 n. 32. We share the understanding, conveyed in Lusardi and Wilkerson itself, that the Wilkerson intervenors did not affect our treatment of Geraghty in that case. Second, there is only a need to reconcile Wilkerson with Davis if one accepts the Secretary's view of Davis. As we explain presently, infra p.1229, we do not.
 
 
 [27]
 We note that the Secretary's brief only cites Davis as the source of the sentence on which she relies. It fails to disclose that we were quoting Tucker in that part of our opinion
 
 
 [28]
 The Secretary also relies on Rocky v. King, 900 F.2d 864, 869 (5th Cir.1990), another decision appearing in Lusardi's list of cases that disagree with the law in this circuit. In her supplemental brief, the Secretary argues that "Rocky is legally indistinguishable from the instant case." Appellee's Supp.Br. at 4. That may be so, but we need not distinguish a decision based upon a legal conclusion that we reject
 
 
 [29]
 In stating their position on the mootness issue, the plaintiffs do not argue, at least not expressly, that we should also review the district court's March 31 order, where it dismissed part of the case for lack of subject matter jurisdiction. However, they have challenged that decision elsewhere in their briefs. In addition, the reasons they offer for reaching the district court's 12(b)(6) decision apply equally, if not more persuasively, to its construction and application of the mandamus jurisdiction statute and the jurisdictional provision of the Social Security Act, from which the court's March 31 ruling followed. Finally, if we were to review the district court's September 2 order dismissing the case under Rule 12(b)(6), we would in all likelihood have to review its March 31 order as well, because the later decision is premised on the correctness of the earlier one
 Thus, if the case or controversy requirement did not prevent us from reaching one of the district court's decisions, we would have every reason to reach the other, and no reason not to do so. Accordingly, we will determine whether we have jurisdiction to review both orders. The appellants would undoubtedly encourage this approach, even though they have only argued that mootness considerations do not bar review of the Rule 12(b)(6) dismissal.
 
 
 [30]
 Although we do not rely on this point, we are not persuaded by the plaintiffs' contention that a Rule 12(b)(6) dismissal--based upon a court's conclusion that it cannot award relief regardless of the commission of a legal wrong--is not on the merits. See Hubicki v. ACF Industries, Inc., 484 F.2d 519, 523 (3d Cir.1973) ("[A] Rule 12(b)(6) motion raises matters in bar and results in a judgment on the merits."); Mervin v. Federal Trade Commission, 591 F.2d 821, 831 (D.C.Cir.1978) (describing a 12(b)(6) dismissal, based on a finding that the plaintiff had requested relief which was beyond power of an agency to award, as "an adjudication on the merits"); see also 2A James W. Moore, Moore's Federal Practice p 12.14 at 12-100 (2d ed. 1993) ("A judgment dismissing an action after dismissal of the complaint for failure to state a claim is on the merits and bars another action on the same claim."). We do not mean to suggest that decisions to dismiss under Rule 12(b)(6) are always, or even generally, on the merits and entitled to preclusive effect. For example, where such dismissals result from correctable pleading errors, courts often permit plaintiffs to amend or refile their complaint. See 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Sec. 1357 at 360-72 (2d ed. 1990). The district court's decision in this case, however, is not the sort to which a plaintiff might respond by pleading its case differently. The court concluded that it could not remedy the wrong that the plaintiffs allegedly suffered. That ruling is not, as the plaintiffs suggested at oral argument, "jurisdictional." It is a legal conclusion going to the merits of their claim
 
 
 [31]
 The district court made its 12(b)(6) ruling sua sponte. It may well reach a different conclusion after considering arguments such as those that were presented on appeal. Provided the case continues to that point on remand, the parties will almost certainly anticipate and argue the propriety of a 12(b)(6) dismissal before the district court considers that question again
 
 
 [32]
 As we have stated, supra p. 1221, the district court dismissed the motion for certification along with the two motions to intervene, without prejudice, in its order of March 16, 1992. In its next order, the court stated that it would treat those motions as pending to the extent relevant to its analysis. The plaintiffs and intervenors would have been permitted to reactivate their motions by a letter to the court, provided the case survived the defendant's dispositive motions
 
 
 [33]
 Of course, the mootness of the named plaintiffs' challenge to the Secretary's conduct will not prevent the district court from deciding whether other members of the proposed class should be permitted to intervene. See Wilkerson, 828 F.2d at 119-23