**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-21183

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MARCELLUS TEMEL ARTERBERRY, also known as Marceles Temel
Arterberrg, also know as Marcellus Teme Arterberry, also known as
Marcellus T. Arterberry; ARON DEREL HOOD, and LATREED GAYLAND
JACKSON, also known as Latred Gayland Jackson,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Texas, Houston Division
(H-99-CR-259-1)

April 20, 2001

Before GARWOOD, PARKER and DENNIS, Circuit Judges.

PER CURIAM:[*]

Marcellus Temel Arterberry, Aron Derel Hood and Latreed
Gayland Jackson appeal their convictions and sentences for bank
robbery and brandishing a firearm during a crime of violence. We
affirm.

**FACTS AND PROCEDURAL HISTORY**

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

On May 26, 1999, a federal grand jury returned a four-count indictment charging Arterberry, Hood, Jackson and a fourth individual, Rennald Dem'on LeBlanc, with two counts of robbing a federally-insured bank, in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2 and two counts of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2. The charges in Counts 1 and 2 pertained to the February 15, 1999, armed robbery of the Compass Bank in Houston, Texas (the "Compass Bank robbery"); the charges in Counts 3 and 4 pertained to the March 9, 1999, armed robbery of the First National Bank of Rosenberg in Sugarland, Texas (the "Sugarland bank robbery"). The robberies were similar in that the perpetrators of both robberies were young black males wearing T-shirt sleeve masks who, in order to facilitate their escape, made the robbery victims take their clothes off. Further, the robbers in both banks referred to the tellers' cash drawers as "tills" and questioned the employees regarding video cameras and tapes.

LeBlanc's motion for severance was granted and he is consequently not a party to this appeal. Appellants pleaded guilty to Counts 3 and 4 (the Sugarland bank robbery) and waived a jury trial on Counts 1 and 2 (the Compass Bank robbery). Following a one-day bench trial, the court convicted Appellants on Counts 1 and 2. On appeal, Appellants challenge only their convictions on Count 1 and 2.

The defendants were arrested by local police during the course

of the Sugarland bank robbery.  They each made custodial statements to law enforcement officers that implicated them in the Compass Bank robbery.  The Appellants' primary contention, at trial and on appeal, is that those confessions should be suppressed because they were not voluntary.  The district court denied Appellants' motion to suppress, finding that the confessions were voluntary under the totality of the circumstances and thus admissible.

## DISCUSSION

### A. Standard of Review

The voluntariness of a confession presents a mixed question of law and fact.  *Miller v. Fenton*, 474 U.S. 104, 112 (1985).  The district court's factual findings are reviewed for clear error, *United States v. Scurlock*, 52 F.3d 531, 536 (5th Cir. 1995), and will be upheld absent a "definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).  The ultimate question of voluntariness is a legal one that is reviewed *de novo*.  *Miller*, 474 U.S. at 110; *Scurlock*, 52 F.3d at 536.

### B. Suppression of Defendants' Statements

The Government had the burden of establishing, by a preponderance of the evidence, that each defendant was extended his

*Miranda*[1] warnings and knowledgeably and voluntarily waived them. *United States v. Ornelas-Rodriguez*, 12 F.3d 1229, 1347 (5th Cir. 1994). The standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice. *Id.* If a person voluntarily, knowingly, and intelligently waives his constitutional privilege, a statement is not considered compelled within the meaning of the Fifth Amendment. *Id.*

## 1. Arterberry

Arterberry, a 24-year-old male, was the first defendant to be interviewed. The interview started at 5:00 p.m., approximately two hours after his arrest and lasted about 90 minutes. Two officers in plain clothes, Detective Body and Sergeant Ruteshouser, were in the room with Arterberry, who was not handcuffed or restrained. Arterberry indicated that he had experience with law enforcement and judicial systems; he had one prior conviction for which he received probation and a second conviction for which he had served a two-year sentence. Body read Arterberry his *Miranda* rights and advised him that he had "the right to terminate the interview at any time." Arterberry stated that he understood his rights, and he agreed to waive them and speak to the officers.

Arterberry confessed promptly to the Sugarland bank robbery,

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

explaining that he and his accomplices made the employees take their clothes off to prevent them from chasing after the robbers during their getaway. Ruteshouser then questioned Arterberry about the Compass Bank robbery, noting the similarities between the two robberies and showing Arterberry the surveillance photographs taken during the Compass Bank robbery. Arterberry initially denied any involvement in the earlier robbery. The officers employed several tactics to induce Arterberry to confess. They told him that he was the first of the accomplices to be interviewed, and that this was his only opportunity to come clean; they asked him if his daughter would be able to pick him out of the surveillance photographs; they told him that he was subject to prosecution in both state and federal court; they stated that they would advise the probation officer about his cooperation and that any such cooperation "[m]akes a big difference in both systems." Ruteshouser told Arterberry that it would be "very beneficial" for him to tell them what he knew about that robbery "[b]esides what we know, and you know that we know." Ruteshouser once again described the "unique" similarities between the two robberies. Arterberry then confessed, stating "I'm already caught. . . . I might as well tell you the whole deal." After Arterberry confessed, he asked the officers how his confession might be used in determining his sentence. In response to that specific question, the officers told Arterberry that cooperating could result in a deduction of points used to figure the length of his sentence.

5

Arterberry posits two aspects of the interrogation that rendered his confession involuntary. First, he characterizes two statements by the officers as gross misrepresentations: that a confession to the earlier bank robbery would "make[] a big difference" in the length of his prison sentence and would be "very beneficial" to him. Arterberry argues that the only potential sentencing benefit that he was eligible to receive as a consequence of a confession was an acceptance of responsibility adjustment under U.S.S.G. § 3E1.1, which would have reduced his prison sentence by "only a few years." Given his total prison sentence of 552 months, Arterberry argues that a few years did not make a "big difference." Second, he contends that the officers created a false sense of urgency about the need for Arterberry to confess stating that the interview was his only opportunity to cooperate. The district court rejected this view of the interview, concluding that the officers conveyed to Arterberry that this was his only

opportunity to tell the truth from the outset and to tell the same story consistently.

Having reviewed the record, including the video taped interview, we conclude that, given the totality of the circumstances, the officers employed no improper coercion and made no improper promise of leniency to Arterberry.

**2. Jackson**

6

Body and Ruteshouser interviewed Jackson, an 18-year-old male, beginning at 9:06 p.m. the same night, for approximately 45 minutes. Jackson had completed the tenth grade, but has some mental limitations. He is functionally illiterate, able only to recognize a few words and to sign his name. Jackson also had prior experience in the criminal justice system. After being advised of and waiving his *Miranda* rights, Jackson agreed to speak to the officers. At the outset, Jackson confessed to participating in the Sugarland bank robbery that day. During the course of this confession, Ruteshouser explained that, if the case ended up in federal court, "the jail time you get depends on a point system." He further explained that different crimes get different points, and that the length of the sentence also depends on the person's criminal record. Cooperation, he said, "can take points away," adding that the probation officer would contact the interviewing officers to assess Jackson's cooperation.

Turning again to the details of the Sugarland bank robbery, Body asked, "Who told the . . . ladies to take their clothes off?" Jackson replied "that's what we do in every robbery, I guess," but then denied involvement in any other robberies. Ruteshouser next showed him a "picture from one of the surveillance cameras" and asked him if he could identify the individual in it. Jackson identified himself in the photograph. Ruteshouser explained to Jackson that the photograph was taken during the Compass Bank

7

robbery and Jackson replied that he remembered doing it, but not "how we done it." Ruteshouser reminded Jackson "about the downward points for cooperating." Thereafter, Jackson provided further incriminating details concerning his involvement in the Compass Bank robbery.

On appeal, Jackson contends that the officers' statements concerning the "point system" and the opportunity to receive a lower sentence by cooperating amounted to an unconstitutional inducement to confess.

The district court noted that Jackson has "some degree of mental impairment," and delayed ruling on Jackson's motion to suppress pending the completion of a competency examination. Based on the results of that examination and a review of the video tape of the interview, the district court determined that Jackson had sufficient intelligence to understand the officers' questions and effectuate a valid waiver of his rights. The district court also found that Jackson's own actions during the interview demonstrated that he "was able to attempt to cover-up actions that he recognized as wrong." For these reasons, the district court rejected as not persuasive the argument that Jackson lacked the mental capacity to voluntarily make the statement in question and found that the government has met its burden on that point. We agree.

Having reviewed the record, including the video taped interview, we conclude that, given the totality of the circumstances, the officers offered no unconstitutional inducement

8

to obtain Jackson's confessions.

### 3. Hood

Hood, a 24-year-old male, was the last of the suspects interviewed, beginning at 10:02 p.m. on the same night and lasting approximately 40 minutes. Like his co-defendants, Hood had experience with the state criminal justice system, including three prior convictions. After he was advised of and waived his *Miranda* rights and agreed to speak to the officers, he too confessed promptly to the Sugarland bank robbery.

Later in the interview, Ruteshouser asked Hood some questions about the Compass Bank robbery. Hood denied any involvement in other robberies. The officers told Hood that he was the last one to be interviewed and stated "we already know exactly what happened the first time," referring to the Compass Bank robbery. After Hood stated that he understood "plea bargain[s] and all that," Body told him that, if this case went to federal court, "we're talking about getting points reduced, your overall points for sentencing reduced for fully cooperating with us." They also explained the similarities between the two robberies to Hood, telling Hood that his co-defendants had been shown the surveillance photographs of the Compass Bank robbery and had "told us which ones were which." Hood replied, "They did? Can I see them?"

Ruteshouser then showed Hood four picture, one of each person in the robbery. After reviewing the photos, and in response to

Ruteshouser's request, Hood handed the photograph of himself back to Ruteshouser, then went on to provide further details of the Compass Bank robbery.

The district court denied Hood's motion to suppress, noting that Hood's arguments were very similar to those of Arterberry. In particular, the court found that the officers' description of the federal point system did not constitute coercion or amount to an improper promise of benefit in the overall context of the interview, including the disclosure of the evidence that Hood had participated in the earlier robbery.

On appeal, Hood contends that the nature of the questioning and the promises made therein, without counsel, make his statements involuntary and inadmissible under the Fourth, Fifth, and Sixth Amendments to the Constitution. Hood also contends that his right to prompt arraignment under Rule 5(a) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3501 were violated. Having reviewed the record, including the video taped interview, we conclude that, given the totality of the circumstances, Hood's statement was voluntary and not the result of improper inducements.

Hood further argues that the seven hour delay between his 3:00 p.m. arrest and the beginning of the interview, during which time he had not yet been arraigned, violates the requirement that he be

10

promptly taken before a magistrate. *See* § 3501(c). Delay in taking a defendant before a magistrate is only one factor to be considered in determining voluntariness of a defendant's statement, and to render consent involuntary or to require suppression of evidence, the delay must have been unnecessary. *United States v. Killian*, 639 F.2d 206 (5th Cir. 1981). The two officers assigned to this investigation personally interviewed and processed four suspects between the 3:00 p.m. arrest at the robbery site and the conclusion of Hood's interview at approximately 10:40 p.m. We conclude that the officers acted reasonably, that they did not violate any of

Hood's constitutional or statutory rights and that Hood's confession was voluntary and admissible.

## C. Second or subsequent conviction

Jackson contends that the district court misconstrued 18 U.S.C. § 924(c)(1)(C) when it sentenced him on Count 4 of the indictment under the enhanced sentencing provisions as a "second or subsequent" conviction for use of a firearm in a drug offense or crime of violence when his only other conviction for violation of 924(c) was in Count 2 of the same indictment. Jackson contends that § 924(c) should be construed to require a conviction for the earlier offense prior to the commission of the present offense in order to apply the enhanced penalty provision of § 924(c). The Government argues, and Jackson concedes, that his position is

11

foreclosed by the Supreme Court's decision in *Deal v. United States*, 508 U.S. 129 (1993). We agree. We therefore find no merit in Jackson's challenge to the enhanced sentence imposed for Count 4.

## CONCLUSION

Based on the foregoing, we affirm the convictions and sentences of all Appellants.

AFFIRMED.